1

2

3

4                                                     **E-FILED on** ___6/18/07___

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11

| | |
|---|---|
| 12  RICARDO MARTINE MARCOS, JOSE MORALES, & JUAN GONZALEZ 13  HERNANDEZ | No. C-06-07682 RMW |
| 14          Plaintiff, | ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR COMPEL 15     v. | ARBITRATION |
| 16  KOREANA PLAZA MARKET OAKLAND, INC., BYONG  YU & DOES 1 to 10 17 | **[Re Docket No. 10]** |
| 18          Defendants. | |

19

20

21       Defendant Koreana Plaza Market moves to dismiss plaintiffs Ricardo Marcos, Jose Morales,

22  and Juan Hernandez' case or in the alternative, to stay the action and compel arbitration between the

23  parties.  For the reasons stated below, the court denies Koreana Plaza Market's motion.

                          **I. BACKGROUND**
24

25       Plaintiffs Jose Morales ("Morales"), Juan Gonzalez Hernandez ("Hernandez"), and Ricardo

    Marcos ("Marcos") were employed by defendant Koreana Plaza Market ("Koreana Market") and its
26
    owner Byong Yu.  First Am. Compl. ("FAC") ¶ 2.  Morales worked from approximately November
27
    1, 1999 to September 19, 2006.  Mot. Dismiss at 1.  Hernandez worked from approximately October
28
    21, 2003 to January 20, 2007.  *Id.*  Marcos worked from approximately September 19, 2004 to July

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR COMPEL ARBITRATION—No. C-06-07682 RMW
KJ

1  23, 2005. *Id*. All three plaintiffs claim to have worked over eight hours a day and over forty hours a

2  week on a regular basis, and that they did not perform "exempt" job duties during the course of their

3  work. FAC ¶¶ 8-9.

4       Plaintiffs allege, *inter alia*, that Koreana Market only paid them straight time for their

5  overtime work. FAC ¶ 14. Plaintiffs are seeking compensatory damages in unpaid overtime wages,

6  liquidated damages for unpaid overtime wages, pre-judgment interest of 10% of the unpaid overtime

7  compensation and unpaid salaries, wages for failure to provide required meal and rest periods,

8  waiting time penalty damages, restitution of unpaid overtime, reasonable attorney's fees, and costs of

9  the suit. FAC at 8-9.

10      Koreana Market asserts that the parties have agreed to arbitrate this dispute. On December

11  29, 2005, Hernandez and Morales each signed an "Acknowledgment of Receipt of Handbook." Yu

12  Decl., Ex. B. Both Hernandez and Morales also signed an "Agreement to Arbitrate Disputes" which

13  states, "By signing the space below you are acknowledging that you have agreed to have any dispute

14  arising out of or related to your employment with the Koreana Plaza Market Oakland, Inc. ('The

15  Company'), with the sole exception of disputes involving your alleged violation of the company's

16  confidentiality and conflict of interest policy, to be decided by neutral arbitration." Yu Decl., Ex. C.

17  There is no evidence that Marcos signed the arbitration agreement.

18                                    **II.  ANALYSIS**

19      Koreana Market moves to compel arbitration pursuant to the written arbitration agreement.

20  Plaintiffs Morales and Hernandez contend that the "Agreement to Arbitrate Disputes" is

21  procedurally and substantively unconscionable. Opp'n at 2. They claim that the arbitration

22  agreement is procedurally unconscionable because they only spoke Spanish, could not understand

23  the document, and did not have an opportunity to investigate what they were signing. *Id*. at 2.

24  Plaintiffs also claim that the arbitration agreement is substantively unconscionable because it lacks

25  mutuality, limits remedies available to plaintiffs, and requires them to pay unreasonable arbitration

26  fees.

27

28

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR COMPEL ARBITRATION—No. C-06-07682 RMW
KJ                                                    2

1

2          **A.        Legal Standard**

3          The arbitration agreement states that the "arbitration shall be conducted by the American

4  Arbitration Association in accordance with the Commercial Arbitration Rules and Title 9 of the

5  California Code of Civil Procedure."  Yu Decl., Ex. C.  Under the Federal Arbitration Act ("FAA")

6  the court applies ordinary state law principles that govern the formation of contracts in assessing

7  whether an arbitration agreement is enforceable.  *Davis v. O'Melveny & Myers*, ___ F.3d ___, 2007

8  WL 1394530, *3 (9th Cir. 2007).

9          Under California law, if a contract contains an arbitration clause, a court shall order

10  arbitration unless the right to compel arbitration has been waived, grounds exist for revocation of the

11  agreement, or a party to the arbitration agreement is also a party to a pending court action that arises

12  out of the same transaction and there is a possibility of conflicting rulings on a common issue of law

13  or fact.  Cal. Civ. Proc. Code § 1281.2.  The petitioner has the burden of proving the existence of the

14  agreement through a preponderance of the evidence, and the opposing party must prove facts

15  necessary to its defense through a preponderance of the evidence.  *Engalla v. Permanente Medical*

16  *Group, Inc.*, 15 Cal. App. 4th 951, 972 (1997).

17          Under the FAA, a court's role in determining whether an arbitration agreement is enforceable

18  is limited to (1) whether a valid arbitration agreement exists and (2) whether the agreement

19  encompasses the dispute at issue.  *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

20  F.3d 1126, 1130 (9th Cir. 2000).  Any doubt concerning the scope of arbitrable issues should be

21  resolved in favor of arbitration.  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S.

22  1, 24-25 (1983).  Section 2 of the FAA provides that arbitration agreements shall be valid "save

23  upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

24  Arbitration agreements may be invalidated by applying generally available contract defenses, such

25  as fraud, duress, or unconscionability.  *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687

26  (1996).  Here, plaintiffs argue that the arbitration agreement is unenforceable because it is

27  unconscionable.

28

1      **B.      Unconscionability**

2            The arbitration agreement provides:

3            "By signing the space below you are acknowledging that you have agreed to have
             any dispute arising out of or related to your employment with the Koreana Plaza
4            Market Oakland, Inc. ("The Company"), with the sole exception of disputes
             involving your alleged violation of the company's confidentiality and conflict of
5            interest policy, to be decided by neutral arbitration."

6      Yu Decl., Ex. C.  Since neither party disputes the existence of the arbitration agreement, arbitration

7      is appropriate here absent a finding that grounds exist for the revocation of the agreement.  Under

8      California law, an agreement is enforceable unless it is both procedurally and substantively

9      unconscionable.  *Armendariz v. Foundation Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 114

10     (2000).  Both procedural and substantive unconscionability must be present in order for the court to

11     refuse to enforce a contract under the doctrine of unconscionability.  *Wilens v. TD Waterhouse*

12     *Group, Inc.*, 120 Cal. App. 4th 746, 753 (2003).  The more substantively oppressive a contract term

13     is, the less evidence of procedural unconscionability is required to conclude that the term is

14     unenforceable, and vice versa.  *O'Hare v. Municipal Resource Consultants*,  107 Cal. App. 4th 267,

15     272 (2003); *McManus v. CIBC World Markets Corp*., 109 Cal. App. 4th 76, 87 (2003).

16            **1.      Procedural Unconscionability**

17           Plaintiffs argue that the arbitration agreement is procedurally unconscionable.  Procedural

18     unconscionability concerns the manner in which the disputed contract clause is presented to and

19     negotiated with the party in the weaker bargaining position.  *Nagrampa v. MailCoups, Inc*., 469

20     F.3d 1257 (9th Cir. 2006).  Procedural unconscionability analysis focuses on oppression or surprise.

21     *Flores v. Transamerica HomeFirst, Inc*., 93 Cal. App. 4th 846, 853 (2001).

22           Plaintiffs argue that procedural unconscionability exists because the defendants had superior

23     bargaining power when asking them to sign the arbitration agreement.  Opp'n at 6.  They allege that

24     Koreana Market told them to sign the arbitration agreement in order to get paid.  Wang Decl., Exs.

25     1-2.  In *Davis*, the court held an O'Melveny & Myers Dispute Resolution Program ("DRP") to be

26     procedurally unconscionable when an employee, a paralegal at the firm, was given three months to

27     consider the arbitration agreement, which was presented to firm employees on a "take it or leave it"

28

1    basis. *Davis*, 2007 WL 1394530 at *4. Although employees were invited to ask questions about the

2    DRP, the terms were not negotiable. *Id*. at *5. The court held that the DRP was unconscionable

3    despite finding that the DRP gave ample notice of the program and its terms, and that there was no

4    evidence that the firm put undue pressure on its employees. *Id*. at *4. The terms of the DRP were

5    not concealed in an employee handbook, so there was no element of surprise or concealment. *Id*.

6    The court held that a "take it or leave it" agreement cannot be saved from a charge of procedural

7    unconscionability simply because an employee was given time to consider the agreement. *Id.* at *5.

8    Here, defendants contend that plaintiffs had several days to consider the agreement, while plaintiffs

9    assert that they were told to sign the agreement immediately. Even assuming plaintiffs had several

10   days, this might not be enough time to consider the agreement under *Davis*, particularly given the

11   lack of explanation of its terms and the limited English ability of plaintiffs. *Id.* at *6.

12          Plaintiffs have presented evidence that they were not fully literate in English. Plaintiffs

13   argue that they could not understand the arbitration agreement and that no one read or explained the

14   document to them. Koreana Market acknowledges that plaintiffs had a limited ability to read

15   English but asserts that plaintiffs could read enough English to understand the general nature of the

16   agreement. Koreana Market also argues that plaintiffs never raised issues about having to read

17   documents in English. Although Koreana Market presents evidence that several Spanish-speaking

18   employees regularly translated English documents for other employees, it provides no evidence that

19   plaintiffs obtained such assistance or were encouraged seek it. Defendants have not presented

20   specific facts showing that plaintiffs knew or understood the terms of the agreement or consequences

21   of not signing the agreement in light of their limited English. Because the evidence is undisputed

22   that plaintiffs' understanding of English is at best limited, the agreement was procedurally

23   unconscionable as there is substantial risk that plaintiffs did not understand what it was they were

24   signing.

25          In response to plaintiff's argument that they were told to sign the agreement to be paid,

26   Koreana Market contends that the agreement was completely voluntary. Several Koreana Market

27   employees signed declarations that the arbitration provisions were voluntary and that employees

28

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR COMPEL ARBITRATION—No. C-06-07682 RMW
KJ                                                              5

1  could take the documents home before signing them.  Iskander Decl., Exs. A-D.  Even if entry into

2  the agreement was optional and not required, defendants have not presented facts opposing plaintiffs'

3  allegations that they had to sign the arbitration agreement in order to get paid.  The agreement is

4  somewhat analogous to the "take it or leave it" situation presented in *Davis* in that plaintiffs here had

5  no meaningful alternative to signing the agreement.  Because defendants have not presented specific

6  facts showing that plaintiffs had a meaningful understanding of the alleged voluntary nature of the

7  agreement, the plaintiffs cannot be said to have voluntarily agreed to arbitration.

8       Defendants have also acknowledged that they did not explain the terms and the consequences

9  of not signing the agreement to the plaintiffs.  In *Davis*, the agreement was found to be

10  unconscionable as to a paralegal at O'Melveny & Myers.  *Davis*,  2007 WL 1394530 at *5.  Here,

11  plaintiffs are supermarket employees who likely understood less about arbitration and the

12  consequences of signing the agreement than did the paralegal in *Davis*.  Further, unlike in *Davis*,

13  defendants did not present facts indicating that they invited plaintiffs to ask questions regarding the

14  agreement or otherwise provided an explanation about the impact of agreeing to arbitrate or the

15  limitations of rights set forth in the agreement.  This lack of explanation further supports a finding of

16  procedural unconscionability.

17       Overall, plaintiffs have presented direct, admissible evidence that the arbitration agreement

18  was not explained to them and that they were required to sign it in order to continue to be paid.  By

19  contrast, defendants have offered no testimony concerning what plaintiffs were told regarding the

20  agreement or directly responding to plaintiffs' declarations that they had to sign the agreement to get

21  paid.  Thus, the court finds that plaintiffs' sworn statements that they had limited English language

22  abilities and  were required to sign the agreement in order to get paid, along with the lack of

23  evidence that defendants explained the terms and consequences of the agreement to them,

24  demonstrate procedural unconscionability.

25       **2.**     **Substantive Unconscionability**

26       Substantive unconscionability focuses on whether an agreement is one-sided or would result

27  in overly harsh results.  *Armendariz*, 24 Cal. 4th 83 at 114.  Arbitration agreements require at least a

28

1  modicum of bilaterality.  *Id*. at 117.

2  Plaintiffs argue that the agreement to arbitrate is substantively unconscionable because it

3  limits statutorily-available  remedies.  Specifically, they argue that under the Fair Labor Standards

4  Act ("FLSA"), an award of reasonable attorney's fees is mandatory but that the arbitration agreement

5  precludes the recovery of such fees.  29 U.S.C. § 216(b).  Koreana Market contends that plaintiffs'

6  damages are not limited at all[1] and that a strong policy in favor of arbitration should be sufficient to

7  compel arbitration.  Reply at 7.  Koreana Market further asserts that agreements requiring parties to

8  bear their own attorney's fees have not been considered to be unconscionable in other jurisdictions.

9  *See Faber v. Menard, Inc.*, 367 F.3d 1048 (8th Cir. 2004).

10  The arbitration agreement states that "neither the Company nor the employee shall be entitled

11  to recover their attorney's fees from the other."  Yu Decl., Ex. C.  This is a clear attempt to limit

12  plaintiffs' potential recovery of attorney's fees.  Arbitration agreements may not require employees to

13  waive potential recovery for statutory rights in an arbitral forum, especially for statutory rights

14  established for a "public reason."  *Davis*, 2007 WL 1394530 at *13.  Here, plaintiffs argue that the

15  FLSA permits an award of reasonable attorney's fees.  Per *Davis*, this statutory right was established

16  for a "public reason."  *Id*.  Therefore, the arbitration agreement's limitation of recovery for attorney's

17  fees is evidence of substantive unconscionability.

18  **C.      Severability**

19  Koreana Market argues that the court may sever any invalid provisions of the arbitration

20  agreement and order arbitration.  Reply at 9.  If an unconscionable provision is collateral to the main

21  purpose of the contract, it may be severed and the remainder of the contract enforced.  *Armendariz,*

22  24 Cal. 4th at 124.  Whether the entire agreement is tainted with illegality requires the court to look

23  into whether the offending provisions permeate throughout the contract.  *Id*.

24  The court has found the agreement to be both procedurally and substantively unconscionable.

25  Notwithstanding Koreana Market's argument that the attorney's fees provision could be severed, as

26

27  [1]      Defendants do not concede that the FLSA, which mandates recovery of attorney's

28  fees, applies here.

1    set forth above, the arbitration agreement is tainted with substantive unconscionability in that it

2    limits plaintiff's available remedies.  This substantive unconscionability, along with the significant

3    evidence of procedural unconscionability, leads the court to conclude that the offending provisions

4    cannot be severed from the arbitration agreement and that the arbitration agreement is

5    unenforceable.

6          **D.      Staying the Action**

7          Under 9 U.S.C. § 3 and Cal. Civ. Proc. Code § 1281.4, if a court determines a suit is

8    referable to arbitration, it must stay the proceeding until arbitration has been had in accordance with

9    the terms of the agreement.  Because the court finds the arbitration agreement unenforceable due to

10   unconscionability, it does not stay the action.

11                                    **III.  ORDER**

12         For the foregoing reasons, the court denies Koreana Market's motion to dismiss and denies

13   its motion to stay the action and compel arbitration.

14

15

16   DATED:          6/13/07

17                                           RONALD M. WHYTE
                                            United States District Judge

18

19

20

21

22

23

24

25

26

27

28

1    **Notice of this document has been electronically sent to:**

2    **Counsel for Plaintiff:**

3    Adam Wang                    aqwang@dalbonandwang.com

4    **Counsel for Defendants:**

5    Gregory G. Iskander          ggiskander@duanemorris.com

6
     Counsel are responsible for distributing copies of this document to co-counsel that have not
7    registered for e-filing under the court's CM/ECF program.

8

9

10   **Dated:**    6/18/07                                    /s/ MAG
                                                              **Chambers of Judge Whyte**
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR COMPEL ARBITRATION—No. C-06-07682 RMW
KJ                                                 9